BENDIX AVIATION CORPORATION,
Plaintiff,

v.

John P. GLASS, Jr., Counterclaimant.

Civ. A. No. 8592.

United States District Court
E. D. Pennsylvania.

Nov. 7, 1961.

On Reargument May 7, 1962.

C. Brewster Rhoads of Montgomery, McCracken, Walker & Rhoads, Joseph W. Swain, Jr., Dexter N. Shaw, Howson & Howson, Philadelphia, Pa., for plaintiff.

Leonard L. Kalish, Philadelphia, Pa., for counterclaimant.

KIRKPATRICK, District Judge.

This is a motion under Rule 41[b] to dismiss for failure to prosecute. The pleadings consist of Glass's counterclaim for money damages which has survived the dismissal of the complaint, and Bendix's reply hereto, and, consequently, Glass is in the position of a plaintiff within the terms of the rule.

The transactions giving rise to the counterclaim occurred in the course of Glass's employment with the corporation [Bendix] which terminated 16 years ago. A jury trial has been demanded. Proof by either party will require oral testimony, and counsel for Bendix states that a number of persons having knowledge of the facts are no longer in its employ, the whereabouts of some of them being unknown.

The complaint was filed in 1948. Between that time and July 22, 1959, there were two periods of time, one of about eight months and one of about a year, during which delay was not certainly chargeable to the counterclaimant's inaction, leaving something more than 11 years during which the counterclaim, for whatever reason, remained dormant.

In 1959, as a result of the delay, Bendix moved under Rule 41[b] to dismiss the counterclaim. After hearing argument and being mindful of the reluctance of courts to enter default judgments, I came to the conclusion that there was just enough excuse for the counterclaimant's inactivity to allow him another opportunity to prosecute his case, and I denied the motion to dismiss on July 22, 1959, D.C., 176 F.Supp. 374.

From that time to the present, the material facts are as follows: (1) on July 23, 1959, the case was placed by the Clerk upon the civil jury trial calendar and counsel for the counterclaimant was notified, (2) about two weeks later the case was designated a protracted case and assigned to the writer of this opinion for trial—again (on September 1, 1959) counsel for the counterclaimant was notified. At the same time, in response to his motion for an extension of time to file a pretrial brief, he was also notified that "the Standing Order of October 23, 1958 [1] does not apply to this type of case and arrangements for a pretrial conference should be made directly with the judge." Thereafter, on August 29, 1961, more than two years after his last step in the cause, no action having been taken in the meantime by the counterclaimant, Bendix filed this motion to dismiss.

The principal ground upon which the counterclaimant's counsel seeks to relieve himself and his client of responsibility for the delay is the fact that the case, at all times after it escaped dis-

1. Governing pretrial procedure.

missal in 1959, was upon the civil jury trial calendar.

Under the practice of this court, when a case has been designated as "protracted", the steps necessary to bring it to trial are entirely different from those which are prescribed in an ordinary case. In the latter, after it has been placed upon the civil jury trial list, all that the plaintiff ordinarily need do is wait while the case advances automatically as the older cases are disposed of and ultimately gets a day for trial. This may in some cases be a matter of two years. A protracted case on the other hand does not share in the automatic advance of cases upon the regular trial calendar, but arrangements fixing dates for pretrial and trial must be made with the judge to whom the case has been assigned.

The counterclaimant's counsel was fully aware of the distinction and, moreover, had had it particularly called to his attention by the Clerk in the latter's letter of September 1, 1959. Not only that, but counsel who stated that his office had been following the civil jury trial list could not have helped seeing that cases with higher numbers than his (meaning that they had been placed on the trial list after his) were being tried —a plain indication that his case was not moving ahead. In addition, he was advised by the Clerk that his case had been assigned to a senior judge who did not sit for the trial of cases on the regular civil jury trial list but took cases by special assignment only.

In the earlier motion to dismiss for want of prosecution made in 1959, I accepted as a valid excuse for a large part of the delay the fact that counsel did not know that the case (which had not at that time been designated a "protracted"

case) had been removed from the regular trial list and had no reason to think that it would not be automatically reached for trial in due time.[2]

There is now no such extenuating circumstance. The counterclaimant's attorney knew that the case would not be tried until arrangements were made with the judge. He took no steps of any kind looking toward such arrangements, possibly relying upon the thought that it was safe to do nothing on the principle of letting sleeping dogs lie. At any rate, "failure to prosecute" under the rule does not mean that the plaintiff must have taken any positive steps to delay the trial or prevent it from being reached by operation of the regular machinery of the court. It is quite sufficient if he does nothing, knowing that until something is done there will be no trial.

Although there is no local rule governing the procedure in protracted cases, the practice is well understood, particularly by lawyers with as much familiarity with federal practice as the counterclaimant's counsel. Nor is he unfamiliar with Rule 41(b). In addition to the earlier motion to dismiss in this case, he was counsel in another case which was dismissed for failure to prosecute and in which the dismissal was affirmed by the Court of Appeals in an opinion [3] in which the whole subject was thoroughly reviewed, and in still another [4] in which he escaped dismissal on the principle of pari delicto.

I cannot agree that it is the duty of the judge to whom a protracted case has been assigned to get in touch with counsel and urge or require him to go to trial, even though it would be within his power to do so. The judge in the

2. The only question was, as stated in the opinion, "How soon should a party realize that the machinery of the court, which moves cases along for trial, is not working properly and that the trial of his case will in all probability be indefinitely deferred unless he does something about it?"

3. Ordnance Gauge Company v. Jacquard Knitting Machine Co., 3 Cir., 265 F.2d 189.

4. Tinnerman Products, Inc. v. George K. Garrett Company, D.C., 22 F.R.D. 56.

present case was engaged in at least four other protracted cases one of which consumed 30 actual days of trial, and a judge should not be burdened with keeping track of cases which counsel for the plaintiff obviously does not want to try, when other counsel in other cases are pressing to have their cases disposed of. Nor is the defendant under any duty to take any steps to bring the case to trial.

■ The responsibility is squarely up to the plaintiff and his attorney. The counterclaimant's counsel has argued the case as though the action were a brand new one which had been regularly listed for trial in July 1959 when I denied the earlier motion to dismiss. However, while that order allowed the case to remain on the books, it did not wipe out past history so far as the issue of want of prosecution raised by subsequent inactivity is concerned. I think that I am fully justified in bearing in mind the chronology of this case before the 1959 order in considering whether there is now or ever has been any genuine intention to get this to trial.

At the end of September 1959, the Clerk at my direction inquired of counsel whether or not they would be prepared for trial before the first of January 1960 and was advised that they would not be. Counsel for the counterclaimant asserts that he was told that the judge did not wish to try the case before the first of January 1960. It may be that he misinterpreted the Clerk's message. However, I do not think this of any importance. Even on counsel's version of the occurrence, it would account for a delay of only three months and it does not account for the fact that he did not get in touch with the judge after the first of the

year or at any other time to see whether or not whatever had impeded his case was still doing so. Moreover, he advised the Clerk at that time that he was considering taking further depositions and was not ready for trial on that account. No depositions were taken, and he now advises the Court that he does not intend to take any. Inasmuch as the case will be dismissed under Rule 41(b), it is unnecessary to consider the local two year rule.

The motion to dismiss is granted.

## SUR REARGUMENT OF MOTION TO DISMISS FOR FAILURE TO PROSECUTE

I adhere to my original ruling [1] that this case must be dismissed for want of prosecution.

I am satisfied that counsel for the counterclaimant was not aware of the practice of this court followed in the listing for trial of protracted cases, which existed in 1959–1962 and which, at that time, was not embodied in any rule of court. I, therefore, feel that he can be absolved of disregard of an established practice of the court. However, it is still apparent that, with knowledge that his case was not progressing to trial along with other cases listed on the trial calendar, he did nothing to keep it moving and, in fact, when inquiry was made by the Court in September 1959 as to his readiness for trial, stated that he would have to take more depositions—which in fact have never been noticed.

Taking all this in connection with the history of this 14 year old case,[2] it seems to me that what I said in a previous opinion, "How soon should a party realize that the machinery of the court, which moves cases along for trial, is not work-

1. Opinion filed November 7, 1961.

2. "The complaint was filed in 1948. * * In 1959, as a result of the delay, Bendix moved under Rule 41(b) to dismiss the counterclaim. After hearing argument and being mindful of the reluctance of courts to enter default judgments, I came to the conclusion that there was just enough excuse for the counterclaimant's inactivity to allow him another opportunity to prosecute his case, and I denied the motion to dismiss on July 22, 1959." (Opinion filed November 7, 1961)

ing properly and that the trial of his case will in all probability be indefinitely deferred unless he does something about it?", is still fully applicable. The answer in this case is that the counterclaimant has waited too long.